IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SSI TECHNOLOGIES, LLC,

                Plaintiff,

v.                                           OPINION and ORDER

DONGGUAN ZHENGYANG ELECTRONIC              20-cv-19-jdp
MECHANICAL LTD,

                Defendant.

---

Plaintiff SSI Technologies, LLC is suing defendant Dongguan Zhengyang Electronic Mechanical LTD (DZEM) for patent infringement. Two motions are before the court: (1) SSI's motion to dismiss DZEM's counterclaims for tortious interference and "sham litigation," Dkt. 8; and (2) SSI's motion for leave to file a second amended complaint to add claims for infringement of a second patent, Dkt. 24.

The court will grant SSI's motion to dismiss in part. DZEM has adequately pleaded its tortious-interference counterclaim. But "sham litigation" isn't a standalone claim, and DZEM's attempt to convert it into a patent-misuse counterclaim fails. The court will grant SSI's motion for leave to file a second amended complaint because DZEM identifies no reason to deny the motion.[1]

---

[1] SSI also requests leave to file a reply brief in support of its motion to file a second amended complaint. Dkt. 31. The court will grant the motion and has considered the brief.

ALLEGATIONS OF FACT

The court draws the following facts from DZEM's answer to SSI's first amended complaint, Dkt. 8, which it accepts as true for the purpose of deciding SSI's motion to dismiss. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). The court will also consider facts from documents provided by SSI: a copy of the patent at issue in this suit, Dkt. 5-1, and what SSI says are representative letters that it sent to DZEM's potential customers regarding SSI's patent-infringement allegations, Dkt. 11-1 and Dkt. 11-2. DZEM refers to these documents in its counterclaims, and it doesn't dispute their authenticity, so the court will consider them. *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (court may consider documents that are referred to in the challenged pleading and are central to the challenged claim without converting motion to dismiss into motion for summary judgment).

SSI and DZEM are competitors that manufacture and sell automotive sensors. SSI holds United States Patent No. 9,535,038, which concerns improvements to ultrasonic sensing of characteristics of fluids, such as diesel exhaust fluid concentration. Specifically, the patent claims an apparatus to reduce interference caused by gas bubbles.

On October 8, 2019, SSI sent DZEM a letter accusing it of infringing the '038 patent by manufacturing and selling a sensor called the DEF Quality Sensor. After sending this letter, SSI contacted a truck manufacturer that was close to entering a contract with DZEM regarding DZEM's sensor. SSI told the truck manufacturer that it had threatened DZEM with patent infringement and that the manufacturer could also be liable for patent infringement if it did business with DZEM.

SSI then filed this lawsuit in January 2020. Shortly after doing so, SSI wrote other motor-vehicle manufacturers, some located in the United States and some located abroad. *See,*

*e.g.*, Dkt. 11-1 and Dkt. 11-2. In these letters, SSI told the manufacturers that it had filed this lawsuit alleging that DZEM's sensor violated the '038 patent.

ANALYSIS

A. **DZEM's counterclaims**

SSI has moved to dismiss two of DZEM's counterclaims under Federal Rule of Civil Procedure 12(b)(6), one accusing SSI of tortiously interfering with DZEM's prospective contracts in its communications with motor-vehicle manufacturers, and one accusing SSI of engaging in sham litigation by bringing this lawsuit.

1. **Tortious interference**

SSI contends that DZEM's tortious-interference counterclaim should be dismissed for two reasons: (1) SSI's communications with DZEM's prospective customers were protected by the *Noerr-Pennington* doctrine; and (2) DZEM has failed to state a claim upon which relief can be granted.

a. *Noerr-Pennington* **doctrine**

SSI contends that its letters to the motor-vehicle companies were protected under the *Noerr-Pennington* doctrine. Under that doctrine, a party that petitions the government for redress is protected from liability for its petitioning activity. *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *see also Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1075 (W.D. Wis. 2012). Although the doctrine originally developed in the antitrust context, it has been extended to patent lawsuits and communications regarding such lawsuits. *See, e.g., Apple*, 886 F. Supp. 2d at 1075 (collecting cases applying *Noerr-Pennington* to patent litigation); *Globetrotter Software,*

3

*Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (applying *Noerr-Pennington* to communications regarding patent-infringement lawsuit). And the doctrine has been extended to cover not only liability for antitrust violations, but also claims of tortious interference with business relationships. *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983).

But *Noerr-Pennington* immunity is not unlimited: it does not protect sham litigation. As the Supreme Court put it in *Noerr*, the First Amendment would not protect petitioning activity that is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 365 U.S. at 144. The exception has two requirements: (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) the litigation must "use . . . the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon" against a competitor's business relationships. *Prof. Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993) (internal quotation marks omitted) (emphasis in original).

DZEM's pleading meets both requirements, as DZEM accuses SSI of engaging in objectively baseless litigation for the purpose of harming DZEM's business relationships:

> 52. SSI knows that its patent is not infringed, and knew that its claims of patent infringement were objectively baseless prior to it sending its October 9, 2019 letter and prior to its filing of the Complaint in this action. . . .
>
> 59. On information and belief, SSI threatened and continues to threaten customers and prospective customers of DZEM despite being aware that the '038 Patent is not infringed by the DZEM Sensor, and that to the extent that the claims of the '038 Patent are interpreted in a manner that would read on the DZEM Sensor, that the claims would be invalid in view of at least the prior art references

> to the '038 Patent that teach an ultrasonic fluid sensor and disclose covers that do not utilize a mesh to direct bubbles away from a sensing area.

Dkt. 8, at 15–16.

SSI argues that the court should dismiss this counterclaim because SSI's infringement claim is based on a reasonable construction of its patent. But it is premature to test a party's claim construction on a Rule 12(b)(6) motion. *See Oxbo Int'l Corp. v. H&S Mfg. Co., Inc.*, No. 15-cv-292-jdp, 2016 WL 4435302, at *2–3 (W.D. Wis. Aug. 19, 2016). SSI attempts to distinguish *Oxbo* by contending that the court can determine that SSI's claim construction isn't objectively baseless without fully constructing the claim. But doing so would still require the court to go beyond the pleadings and weigh the merits of SSI's case, which isn't appropriate on a motion to dismiss.

SSI also contends that DZEM has failed to plead facts supporting the second requirement of the sham litigation exception, which is that SSI intended to use this litigation itself, rather than its outcome, as an anticompetitive weapon. But this requirement is met by DZEM's allegations that SSI filed this lawsuit and wrote to DZEM's competitors knowing that its patent hadn't been infringed.

The sham-litigation exception sets a high bar, and when the evidence is in, SSI may well be entitled to *Noerr-Pennington* immunity for the reasons it gives here. But the appropriate time to test the strength of DZEM's counterclaim is at summary judgment, not on a motion to dismiss. DZEM's allegations, taken as true, would bar SSI from relying on *Noerr-Pennington* immunity, so the doctrine doesn't require dismissal of this counterclaim.

### b. Failure to state a claim

SSI contends that DZEM has failed to allege facts that would support required elements of its counterclaim for tortious interference. Both parties assume that Wisconsin law applies to the counterclaim, so the court will do the same. Under Wisconsin law, a claim for tortious interference has five elements: (1) the plaintiff had a prospective contractual relationship with a third party; (2) the defendant interfered with that relationship; (3) the defendant's interference was intentional; (4) the interference was causally connected to the plaintiff's damages; and (5) the interference wasn't privileged or justified. *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 597 N.W.2d 462, 478 (Ct. App. 1999). SSI contends that DZEM has failed to allege facts that would support the first, third, and fourth elements. SSI also contends that its interference was justified, but that argument is essentially the same as SSI's argument about the *Noerr-Pennington* doctrine, and it fails for the same reasons here.

The first element requires a "sufficiently certain, concrete and definite prospective relationship" between DZEM and a third party. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 689 (7th Cir. 1999), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). SSI says that DZEM couldn't have had such a relationship because DZEM denies in its answer that it offered or sold "the Accused Products" in the United States, Dkt. 8, at 2. But SSI's complaint defined "Accused Products" as products that infringe on the '038 patent, so DZEM can deny the infringement allegation without implying that it didn't have a prospective customer for its accused sensors. DZEM alleges that it and a "Netherlands truck company were close to entering a contract regarding the DZEM Sensor when the Netherlands truck company received the notice from SSI." *Id.* at 10. DZEM didn't identify its prospective customers by name, but SSI doesn't attack the pleading on that basis.

6

In reply, SSI offers only a conclusory statement that DZEM's allegation that it was close to entering a contract "does not make [the] prospective contract certain, definite and concrete." Dkt. 17, at 11 (internal quotation marks omitted). SSI relies on *Oxbo* for this proposition, but *Oxbo* held only that a proposed sale to a potential buyer was not a certain, definite, and concrete contractual relationship. 2016 WL 4435302 at *3. DZEM alleges that it did more than just offer to sell its sensor to the truck company—it says that they were close to entering a contract for the sensor. This allegation is enough to satisfy the first element of the counterclaim.

The third element requires that SSI's interference with the prospective contract be intentional. DZEM alleges that SSI was aware of the prospective relationships between DZEM and its prospective customers. *See, e.g.,* Dkt. 8, at 10 ("On information and belief, SSI was aware of the prospective relationship between DZEM and the Netherlands truck company."). SSI contends that this is merely a "formulaic and conclusory allegation." Dkt. 11, at 20. But DZEM is entitled at the pleading stage to rely on information and belief to support its allegations about "matters peculiarly within the knowledge of [SSI]." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (internal quotation marks omitted). And it's reasonable to infer from the representative letters provided by SSI that SSI's conduct was intentional. So DZEM's allegations satisfy this element as well.

The fourth element requires a causal connection between SSI's communications and DZEM's harm. DZEM alleges that SSI's communications with the Netherlands truck company caused it "to question entering into a contractual relationship with DZEM." Dkt. 8, at 10. SSI raises two arguments regarding this element. First, SSI says that DZEM hasn't alleged an actual harm. But on SSI's motion to dismiss, it's fair to infer from this allegation that the truck company was close to entering into a contract with DZEM but chose either to delay doing so

7

or not to do so at all. And DZEM asserts in its brief that it hasn't entered into a contract with this company because of SSI's interference. Dkt. 16, at 15. Although this allegation isn't expressly contained in DZEM's pleading, the court may consider facts alleged in a brief in opposition to a motion to dismiss if they are consistent with the allegations in the challenged pleading. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). Second, SSI contends that DZEM's position that SSI's lawsuit is objectively baseless makes it less plausible that SSI's communications could have harmed DZEM. But this argument would require the court to weigh the evidence, which is inappropriate on a motion to dismiss.

In sum, DZEM has adequately pleaded its tortious-interference counterclaim, so the court will deny SSI's motion to dismiss it.

### 2. Sham litigation/patent misuse

SSI also moves to dismiss what DZEM calls a counterclaim for "sham litigation." In its response, DZEM concedes that sham litigation is not an independent claim. Dkt. 16, at 16; *see also Ervin Equip., Inc. v. Wabash Nat'l Corp.*, No. 4:15-cv-104, 2017 WL 416304, at *2 (N.D. Ind. Jan. 31, 2017) ("'Sham litigation' is not a claim by itself, but rather an exception to the *Noerr-Pennington* doctrine."). DZEM says that this "counterclaim could more aptly have been labeled patent unenforceability for patent misuse," and asks for leave to amend its pleading to do so. Dkt. 16, at 12–13.

Patent misuse is a judicially created doctrine that "relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Patent misuse is a defense to infringement that "requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF,*

8

*Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986). Two common examples of patent misuse are using a patentee's market power "to restrain competition in an unpatented product" and "employing [a] patent beyond its 17-year term." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997).

DZEM contends that by accusing SSI of filing this lawsuit to enforce the '038 patent in bad faith based on objectively baseless infringement claims, it has accused SSI of patent misuse. But filing a frivolous lawsuit doesn't fall within the common understanding of the doctrine of patent misuse, and DZEM identifies no authority to support that position. Although Congress hasn't defined patent misuse through legislation, it has cabined the doctrine by stating that it does not apply to a patent owner who has "sought to enforce his patent rights against infringement." 35 U.S.C. § 271(d). That is precisely what SSI has done by filing this lawsuit. DZEM can't bring a patent-misuse counterclaim solely on the basis that SSI's case lacks even arguable merit.

DZEM hasn't alleged additional conduct that would support a patent misuse defense. The court will grant SSI's motion to dismiss this counterclaim, and it will deny DZEM's request to amend its pleading to assert patent misuse.

## B.  SSI's proposed second amended complaint

SSI seeks leave to file a second amended complaint. Dkt. 24. In its proposed complaint, SSI seeks to add a claim that DZEM's sensor infringes another patent, United States Patent No. 8,733,153. DZEM opposes the motion.

DZEM first contends that SSI has failed to show good cause for amending the court's scheduling order, which set a June 1, 2020 deadline for amending the pleadings without leave of court, Dkt. 14, at 2. SSI moved for leave to file its second amended complaint on June 30.

DZEM contends that SSI must therefore show good cause under Federal Rule of Civil Procedure 16(b)(4) for amending the scheduling order. But the order didn't set a deadline for amending pleadings *with* leave of court, which is what SSI asks to do here. No amendment to the schedule is needed, so SSI doesn't have to show good cause under Rule 16(b)(4).

SSI's motion is governed by Rule 15(a)(2), which says that the court should "freely give leave [to amend a pleading] when justice so requires." DZEM relies on three well-recognized reasons for denying leave to amend: undue delay, dilatory motive, and futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (describing reasons for which court may deny leave to amend).

First, DZEM offers a conclusory argument that SSI engaged in undue delay. SSI explains that it filed its proposed amended complaint on June 30 because DZEM didn't provide requested information that SSI needed to determine whether DZEM's products infringed on the '153 patent until June 5. DZEM says, without elaboration, that SSI could have filed its proposed amended complaint closer to June 5. But a 25-day period to receive technical information, analyze that information, and draft an amended complaint is not the type of delay that would justify denying leave to amend.

Second, DZEM says that SSI had a dilatory motive in waiting to seek leave to amend its complaint because doing so would prevent DZEM from fully investigating its possible invalidity contentions, which were due on July 31. But SSI has a good explanation for its delay—DZEM's refusal to provide the information SSI needed. The court's scheduling order provided for the possibility that a party could seek leave to amend its invalidity contentions if necessary. Dkt. 14, at 3. It should go without saying that DZEM may have a reasonable time to amend its invalidity contentions in response to SSI's new infringement claim.

10

Third, DZEM contends that SSI's proposed amendment would be futile because SSI doesn't allege that DZEM's sensor includes every limitation contained in the claim of the '153 patent identified by SSI in its amendment. SSI alleges that DZEM's sensor directly infringes claim 1 of the '153 patent, which requires SSI to allege that the sensor "contain[s] each and every limitation set forth in [claim 1]," *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019) (internal quotation marks omitted). DZEM's futility argument concerns an allegation by SSI in its proposed complaint that in the DZEM sensor, "a dilution of the fluid is detected while the measured volume of the fluid decreases," Dkt. 24-1, ¶ 40. This corresponds directly to language in claim 1 stating that "a dilution of the fluid is detected while the measured volume of the fluid decreases." Dkt. 24-3, at 16. DZEM contends that claim 1 requires SSI to allege not only that DZEM's sensor measures fluid dilution in this way, but also that the sensor uses this information to determine whether a contaminant exists in the fluid. But DZEM's argument would require the court to engage in claim construction, which is inappropriate in considering whether a proposed amendment would be futile. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (futility analysis applies Rule 12(b)(6) standards); *Buyers Prods. Co. v. CURT Mfg. LLC*, No. 16-cv-220-wmc, 2017 WL 1498154, at *3 (W.D. Wis. Apr. 26, 2017) (claim construction inappropriate on motion to dismiss).

DZEM hasn't identified any persuasive reasons for denying SSI's motion for leave to file a second amended complaint, so the court will grant the motion.

ORDER

IT IS ORDERED that:

1. Plaintiff SSI Technologies, LLC's motion to dismiss defendant Dongguan Zhengyang Electronic Mechanical LTD's counterclaims, Dkt. 8, is GRANTED in part. Defendant's sham-litigation counterclaim is DISMISSED. The remainder of plaintiff's motion is DENIED.

2. Plaintiff's motion for leave to file a reply brief, Dkt. 31, is GRANTED.

3. Plaintiff's motion for leave to file a second amended complaint, Dkt. 24, is GRANTED.

Entered October 15, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge