IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SSI TECHNOLOGIES, LLC,

                      Plaintiff,

    v.                                                    OPINION and ORDER

DONGGUAN ZHENGYANG ELECTRONIC            20-cv-19-jdp
MECHANICAL LTD,

                      Defendant.

---

This order addresses the parties' motions in limine.

**A. SSI's motions in limine**

    **1. Motion No. 1: exclude certain testimony from Lindsey Fisher**

Lindsey Fisher is DZEM's damages expert. Fisher rebuts the report of SSI's damages expert, Richard Bero, and presents what she believes is a reasonable royalty.

SSI asks the court to exclude Fisher's testimony related to four categories of evidence:

    1) Average royalty rates in the automative industry;

    2) DZEM's market share and profits based on discussions with DZEM personnel;

    3) apportionment of profits based on DZEM patents; and

    4) the court's 2021 summary judgment opinion.

The court will defer its analysis of the fourth category, addressing it in the context of SSI's sixth motion in limine.

    **a. Automotive industry royalty rates**

Fisher states in her report that she "did not identify any license agreement that would be sufficiently comparable to the hypothetical license in this matter or that covered comparable technology to that of the Patent-in-Suit." Dkt. 248, ¶ 199. Despite not finding any specific

comparable license agreement, Fisher cites the IPSCO RoyaltySource database for the average royalty rate in the automotive industry as a "reasonableness check" of her opinions about an appropriate royalty rate in this case. *Id.*, ¶ 200. SSI contends that the court should preclude Fisher from testifying about the average royalty rate in the automotive industry because Fisher does not explain why the average royalty rate for the automotive industry is an appropriate comparison for the technology in this case.

A license for related technology is an appropriate basis for an expert opinion on a reasonable royalty if the license is "sufficiently comparable to the hypothetical license at issue in suit." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)). But "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). "[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case," *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011), and the reasonable royalty calculation "must account for differences in the technologies and economic circumstances of the contracting parties," *Virnetx*, 767 F.3d at 1330 (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed.Cir.2010)). If an expert applies a reliable methodology to account for differences between licenses for related technology and the hypothetical negotiation, disputes about the degree of comparability go to the weight of the expert's testimony, not its admissibility. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

Fisher does not provide any explanation of why the average royalty rate of the automotive industry as a whole is relevant to the specific technology at issue in this case. DZEM

contends that the average royalty rate in the automotive industry is relevant because the sensor at issue here falls within the general category of the automotive industry. But that category includes such a wide range of technologies that it's not an appropriate comparison, at least not without some explanation. Fisher implicitly recognizes the weakness of the comparison, because she relegates the average automotive industry royalty rate to a "reasonableness check," and does not use it as a core part of her analysis. But using it as a reasonableness check is not harmless, because it buttresses her reasonable royalty rate analysis. That buttressing is unreliable without some explanation, which Fisher does not supply. This part of SSI's motion is granted.

### b. DZEM market share and profits

Fisher states that DZEM believes specific competitors "make up approximately 34% of the market, with SSI and DZEM making up the remainder" based on calculations she performed using DZEM's sales data and "[d]iscussions with DZEM personnel." Dkt. 248, ¶ 85. Fisher also used a cost transparency document DZEM provided one of its customers to estimate DZEM's profit per unit of the infringing sensor. *Id.* ¶ 141.

SSI asks the court to preclude Fisher from testifying about DZEM's market share and profits because her analysis is inconsistent with the testimony from DZEM's corporate representative on those topics. SSI deposed DZEM's Rule 30(b)(6) witness, its CEO Robert Kirby, on damages topics on February 2, 2024. One of the noticed topics was DZEM's knowledge of the market for the accused products, including "DZEM's market share for the Accused Products." Dkt. 263-1 at 6. During that deposition, Kirby testified that he could not provide a breakdown of the market share for the sensors at issue in this case, but estimated that DZEM had roughly 50 or 60 percent of the market. Dkt. 241 (Kirby Dep. 149:19–

3

150:13). He also testified that DZEM does not keep records of profits per product in the ordinary course of business. *Id.* (Kirby Dep. 62:5–14).

SSI contends that it was entitled to rely on Kirby's Rule 30(b)(6) testimony that DZEM did not have the market share or profit per product information, and that DZEM is sandbagging by using Fisher to "circumvent" that testimony.

The court will not preclude Fisher from testifying about her analysis of the cost transparency document. The document was available to both sides. Fisher may be able to draw inferences from it using her expertise that Kirby himself could not.

The court will preclude Fisher from offering opinions about market share, because that analysis is based largely on "[d]iscussions with DZEM personnel." See Dkt. 248, ¶ 85 n.164; Dkt. 248-12 (Exhibit 8) n.3. A statement in a Rule 30(b)(6) deposition is not necessarily binding on the corporate entity, tantamount to a response to a request for admission. But once Kirby testified that he (speaking for the company on a properly noticed topic) could provide no more than a rough estimate of DZEM market share, he closed off further inquiry on the topic by SSI. It would be extremely unfair to allow DZEM's expert to use additional market share information provided by unnamed DZEM employees after DZEM (speaking through Kirby as its Rule 30(b)(6) designee) denied that it had any additional information.

Fisher may not offer the opinions stated in Paragraph 85 of her report.

### c. DZEM patents

Fisher cites DZEM's patents in the context of critiquing Bero's opinion on how to apportion profits to the patented features of the infringing product.

SSI contends that DZEM has not shown that the infringing sensor is actually covered by its own patents. So, SSI's argument goes, it would be improper for Fisher to suggest that

4

DZEM's patents demonstrate that the appeal of the infringing sensor is attributable to DZEM's own patented improvements. SSI asks the court to bar Fisher from testifying about DZEM's own patents.

Fisher is free to testify that the portion of profits attributable to SSI's patented technology should be reduced to account for other features of the accused products, including technological innovation by DZEM. But the court will not allow Fisher to refer to DZEM's own patents for two reasons. First, DZEM has not shown that its own patents cover its accused products. Second, and more important, whether DZEM secured patent protection for any of its own technology is irrelevant and confusing to the jury.

2. **Motion No. 2: exclude statements from customers about SSI's sensors**

Two DZEM employees testified at their depositions that some of DZEM's customers told DZEM that the customers had experienced quality issues, warranty issues, or product failure when using SSI's sensor. Dkt. 241 (Kirby Dep. 122:1–18); Dkt. 164 (Irvin Dep. 154:23–155:21). The point of the testimony is to show that customer's bought DZEM's products for reasons other than the appeal of SSI's patented technology.

SSI moves to exclude testimony about customer complaints as hearsay. SSI also moves to exclude as hearsay a document from one of DZEM's customers, Navistar, that says Navistar was experiencing high rates of failure with its current sensor.

DZEM contends that the customer statements are not offered for the truth, but for non-hearsay purposes: (1) to show that SSI's customers were initiating contact with DZEM, rather than DZEM targeting them; (2) to show that SSI's former customers were not approaching DZEM for its infringing sensor because of SSI's technology; and (3) to show that

5

DZEM gained market share for reasons other than its infringement of SSI's sensor. Dkt. 286, at 14–15.

The court is not persuaded by DZEM's argument. DZEM's overall purpose in using the customer statements is to show that customers didn't like the SSI product because of quality problems. But those customer statements explain the customer's motives only if the customer's statements are true. The court concludes that the testimony of DZEM's employees repeating customers' statements is inadmissible hearsay. SSI's motion is granted.

The court expects the ruling to extends to the Navistar development agreement, insofar as that agreement purports to show that Navistar experience high failure rates with SSI sensors. The court will hear further argument about the Navistar agreement at the final pretrial conference.

### 3. Motion No. 3: exclude evidence concerning sales and performance of DZEM's sensor without a rubber cover and the quality of SSI's sensor

The parties agree that without the rubber cover, DZEM's sensor does not infringe SSI's patent. SSI moves to exclude three categories of evidence related to the coverless sensor as a non-infringing alternative.

First, SSI contends that DZEM has failed to produce admissible evidence of its sales of the coverless sensors. DZEM's evidence of these sales is two spreadsheets created for this litigation. SSI objects to the spreadsheets as unsubstantiated because DZEM hasn't produced the underlying purchase orders or invoices.

DZEM contends that the spreadsheets are admissible as a summary under Rule 1006 of the Federal Rules of Evidence. But that rule requires the proponent of the summary to "make the originals or duplicates available for examination or copying, or both, by other parties at a

6

reasonable time and place." DZEM hasn't done that. The spreadsheets are hearsay, which means that DZEM may not use them. But SSI can use them against DZEM, because an opposing party's statement is not hearsay under Rule 801(d)(2).

This doesn't completely resolve the issue, because experts may rely on facts or data that are not directly admissible, if the facts or data are ones that "experts in the particular field would reasonably rely on." Rule 703. At the final pretrial conference, the court will hear argument about the effect of the court's ruling on the opinions of the experts.

Second, SSI contends that the court should exclude evidence of testing by DZEM of its sensor without a cover because DZEM did not produce documents related to that testing until after Kirby's deposition as DZEM's Rule 30(b)(6) witness.

SSI properly noticed DZEM for the topic of testing the accused products modified to avoid infringement. SSI questioned Kirby on the testing of its coverless sensor. But SSI contends that its examination was hampered by DZEM's failure to produce related documents. DZEM says that the testing documents had not been requested. As addressed in the context of motion in limine no. 5, the court will hear further on the issue at the final pretrial conference. SSI should be prepared to show that the testing documents were requested before the Kirby deposition.

Third, SSI objects to Kirby's testing testimony because he has not been disclosed as an expert. But a lay witness may offer opinions based on personal knowledge acquired through their work in a business. *See* Comment on the 2000 Amendment to Fed. R. Evid. 701. "Such testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge." *Id.* Lay opinion sometimes touches on technical matters. But, as the Comment explains, "lay testimony 'results from a process of reasoning

7

familiar in everyday life, while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Id*. (*citing State v. Brown*, 836 S.W.2d 530, 549 (1992)).

DZEM concedes that Kirby is a lay witness who may not testify about scientific or technical evidence governed by Rule 702. In the passages cited by SSI, Kirby explains the reasons for technical failures of SSI sensor, a topic well within the scope of Rule 702. Dkt. 286, at 19 (citing Dkt. 241 at 31:24–32:13; 115:17–116:7; and 126:2–21). DZEM says this is just testimony about a "regularly conducted business activity," but that misses the point. It's testimony about technical matters that clearly require the reasoning of an expert. It is not admissible lay opinion testimony. This part of SSI's motion is granted.

SSI's motion on this issue suggests that its request that the court exclude expert testimony from Kirby applies more generally to Kirby's testimony about testing of DZEM's product. But SSI does not specifically identify portions of Kirby's testimony that contain technical explanations within the scope of Rule 702 about DZEM's senor, so SSI should be prepared to identify specific testimony if it intended this part of its motion to cover his testimony about testing of DZEM's sensor.

4. **Motion No. 4: exclude certain testimony from Jack Ganssle**

DZEM's technical expert, Jack Ganssle, provided a supplemental report addressing whether DZEM's sensor without the rubber cover is an acceptable non-infringing alternative, and responding to Bero's opinions concerning the critical features of SSI's sensor. SSI asks the court to exclude three categories of testimony from Ganssle.

First, SSI contends that Ganssle is not qualified to offer opinions about general principles of customer choice. Dkt. 263-6, ¶¶ 3–5. In paragraphs four and five of Ganssle's

8

supplemental report, Ganssle explains that there are situations where consumers may prefer a product even if it is not technically superior, using the widespread adoption of Windows over Linux as an example. Ganssle has no special training or experience in customer choice. The example he cites is from an unrelated field. And his point is a common-sense one, on which his testimony would not be helpful to the jury. The court will grant SSI's motion to exclude testimony based on paragraphs 3 through 5 of Ganssle's supplemental report.

The second category involves Ganssle's explanations about the performance of DZEM's sensor without the cover, which is based entirely on Kirby's testimony. *Id.*, ¶¶ 6–14. SSI contends that this testimony is based on insufficient facts and data because it merely repeats Kirby's testimony without verifying it. The court agrees that Ganssle's opinion is not based on sufficient data. And his opinion on this issue boils down to the assertion that the coverless sensors meet customers' technical requirements because customers are purchasing them. A layperson could draw that inference without the help of an expert. His testimony about customer's use of the coverless sensor is not admissible as expert testimony under Rule 702. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir.1998)). The court will grant SSI's motion to exclude testimony based on paragraphs 6 through 14 of Ganssle's supplemental report.

The third category concerns part of Ganssle's response Bero. Bero uses the term "boot" to describe SSI's innovation in sensor technology. Ganssle says that he sees nothing resembling a boot in the '038 patent. *Id.*, ¶ 28. SSI contends that this is really argument about whether DZEM's sensor infringes SSI's patent. DZEM asks the court to deny SSI's motion as moot because it will not offer testimony or arguments regarding non-infringement. But paragraphs 26 through 29 of Ganssle's report are arguably inconsistent with the court's finding that

9

DZEM's sensor infringes the '038 patent. The court will grant SSI's motion to exclude testimony based on paragraphs 26 through 29 of Ganssle's supplemental report.

5. **Motion No. 5: exclude documents produced after February 2, 2024**

SSI asks the court to preclude DZEM from relying on documents it produced after SSI deposed DZEM's Rule 30(b)(6) witness about damages on February 2, 2024, as well as documents it produced between December 2023 and February 2024 that were dated before July 2023. SSI says that, in May 2023, it requested that DZEM supplement its discovery responses and produce documents relevant to damages and that DZEM should have produced these documents promptly after that request. Even though supplemental discovery was open through May 15, 2024, SSI contends that DZEM had no justification for producing a significant portion of its total production in the three weeks after the Rule 30(b)(6) deposition on damages.

DZEM says that it produced documents related to testing the accused sensor without a rubber cover after the February 2 deposition because SSI specifically requested those documents during the deposition. But DZEM does not say whether all the documents it produced after the deposition were in response to that request, and it does not otherwise describe the types of documents that it produced after remand. DZEM also contends that SSI's motion should be dismissed because SSI did not explain how it was harmed by the post-deposition production.

DZEM made a sizeable document production more than three weeks after SSI deposed DZEM's corporate representative about damages and less than three weeks before SSI's damages expert report was due. This deprived SSI of the opportunity to question DZEM about

the newly produced documents and limited the time in which SSI and its expert could review and analyze them.

But whether SSI was actually prejudiced by the timing of DZEM's production depends on (1) what the documents are and (2) whether they are responsive to SSI's prior requests for production. So the court will reserve a ruling on this motion until the final pretrial conference.

### 6. Motion No. 6: regarding dismissed claims

SSI asks the court to preclude DZEM from introducing evidence or argument about three issues previously decided by the court: (1) DZEM's counterclaim for tortious inference and SSI's claim for infringement of its '153 patent, which the court resolved in its 2021 summary judgment decision; (2) the court's 2021 decision that DZEM's sensor did not infringe the '038 patent; and (3) any argument that would undermine the court's 2024 summary judgment decision that DZEM's sensor infringes the '038 patent.

As for the first issue, the court agrees that the resolved claim and counterclaim are irrelevant to the issues at trial. The court will grant SSI's motion to exclude such evidence and argument.

The second issue, concerning the court's now-reversed summary judgment decision concerning the '038 patent, is more complex. DZEM contends the court's summary judgment order is evidence that DZEM's infringement was not willful. The court agrees, but it will not allow DZEM to present the court's opinion to the jury. The question raises the broader issue of whether SSI has any viable claim for willful infringement, at least for the period before the Federal Circuit's remand. The court will reserve ruling on this part of SSI's motion until the final pretrial conference.

As for the third issue, the parties seem to be in agreement. DZEM may not introduce evidence that undermines the court's decision that the '038 patent is infringed and valid. DZEM may introduce evidence concerning the coverless sensor as a non-infringing alternative, so long as the evidence complies with the court's other rulings.

## B. DZEM's motions in limine

### 1. Motions in limine nos. 1 and 2: regarding references to the parties' nationality and not referring to DZEM by its full name

The motions are granted as unopposed. The parties' nationalities should not be unduly emphasized, unnecessarily referenced, or invoked to curry favor or disfavor with the jury. The parties will refer to defendant as "KUS," "DZEM," or "Defendant" rather than using its full name, outside of introductory statements and if a situation arises in which it is necessary to refer to DZEM by its full name.

### 2. Motion in limine no. 3: exclude opinions from Richard Bero concerning lost profits damages

SSI retained Richard Bero as its damages expert in this case. Bero first submitted a report in 2021, in advance of the court's first summary judgment decision. Bero supplemented his report in 2024, after the court allowed supplemental damages discovery. In his 2021 report, Bero acknowledged that SSI had asserted a damages theory based on lost profits, but he did not calculate lost profit damages or opine on what the damages would be under that theory. Bero's 2021 report explained that he did not calculate lost profits because DZEM had not fully entered the market, so he did not have any data of declining SSI sales or of DZEM's sales to use to perform lost profit calculations. DZEM contends that SSI should now be precluded from relying on Bero's 2024 lost profits analysis because he did not disclose it in his first report.

The court will deny DZEM's motion. The court does not allow experts to freely "reserve the right" to change their damages analyses. But the court routinely allows parties to update their damages analyses to bring them up to date, particularly after a remand. In this case, SSI is doing more than updating its arithmetic. But the court concludes that allowing SSI to present a lost profits theory is appropriate and not unfairly prejudicial to DZEM.

SSI timely disclosed that it was asserting a lost profits damages theory in this case, and Bero's report explicitly stated that, if DZEM sold its products to SSI customers, SSI would be entitled to lost profit damages based on those sales. Dkt. 169, at 31. Conditions changed, as Bero predicted: DZEM did, in fact, sell its products, arguably to SSI customers. DZEM has had notice for years that SSI intended to assert a lost profits theory of damages if DZEM made sales that cut into SSI's market.

3. **Motions in limine nos. 4, 5, and 6: exclude opinions from Richard Bero under *Daubert* and Rule 702**

   a. **Acceptable non-infringing alternative**

Motions no. 4 and 5 both concern non-infringing alternatives, so the court addresses them together.

DZEM contends that Bero did not apply a reliable methodology because he included DZEM's sales of the non-infringing coverless sensor in both his reasonable royalty and lost profits analysis. But SSI disputes that DZEM's coverless sensor is an acceptable non-infringing alternative. As discussed above, SSI concedes that the coverless sensor does not infringe the '038 patent, but SSI contends that DZEM has not provided admissible evidence concerning sales of the coverless sensor. So whether the coverless sensor is an *acceptable* alternative is sharply contested.

13

SSI points out that Bero's report does account for DZEM's assertion that the coverless sensor should not be included in the damages calculations by addressing the discrepancy between DZEM's two spreadsheets. Dkt. 247, at 8 n.10; Dkt. 247-2, at 12. Bero's analysis primarily relies on the first spreadsheet. Dkt. 247-2, at 12. But he provides alternative calculations based on the second spreadsheet that assume the coverless sensor is an acceptable non-infringing alternative and excludes the approximately 25,000 units of DZEM sensor assemblies that changed between the two spreadsheets. Simply put, DZEM's objections to how Bero handles DZEM's coverless sensor in his calculations are a disagreement with Bero's conclusions and the factual assumptions that underly them—not his methodology—so they go to the weight of Bero's testimony, not its admissibility. *ActiveVideo Networks*, 694 F.3d at 1333.

Because Bero's report addresses DZEM's claim that the coverless sensor is a non-infringing alternative and provides alternative analysis to address that contention, the court will deny DZEM's motions to exclude his damages opinions based on its contention that he failed to address its non-infringing alternative.

### b. Apportionment of the value of the infringing feature

Motion in limine no. 6 concerns Bero's apportionment of profits to the patented technology.

When parts of a multi-component product infringe a patent, the reasonable royalty analysis must apportion the value of the product among the infringing feature and the value of the other features of the product. *LaserDynamics*, 694 F.3d at 67. This apportionment is facilitated by identifying the smallest saleable practicing unit, which in this case is SSI's standalone sensor. DZEM contends that Bero's reasonable royalty analysis is fundamentally flawed because he says that the smallest saleable practicing unit for the '038 patent is the

14

standalone sensor, but then he uses sales of DZEM's entire sensor-tank assembly as his reasonable royalty base, without apportioning value to DZEM's sensor as the infringing feature. In response SSI contends that DZEM once again misconstrues Bero's report and ignores that Bero did, in fact, apportion the value of the infringing feature.

Once again, DZEM's challenge to Bero's report boils down to a disagreement with Bero's conclusions that goes to the weight that should be given to Bero's testimony rather than its admissibility. Bero's use of DZEM's assemblies in his royalty base was limited to the *number of units* sold, each of which has a single sensor; he explains that he did not use the dollar amount of sales for DZEM's sensor for the royalty rate because DZEM does not track profits per product and because DZEM's sensor was sold as part of a larger assembly, not a standalone product. Dkt. 247, at 14, 32, 60–62. Instead, Bero relied on the profits of the standalone SSI sensor to opine on a reasonable royalty rate per unit and apportioned that profit to specific features of the sensor. *Id.*, at 63–65; Dkt. 247-10; Dkt. 247-11; Dkt. 247-12; Dkt. 247-13; Dkt. 247-14; Dkt. 247-22; Dkt. 247-23. This approach accounts for the existence of other, non-infringing technologies in DZEM's sensor assembly. DZEM may disagree with Bero's conclusions and argue that there are flaws in his analysis. But it has not shown that Bero's conclusions are the result of a fundamentally flawed methodology, so the court will deny DZEM's motion on this issue.

ORDER

IT IS ORDERED that:

1. The court rules on plaintiff SSI Technology, LLC's motions in limine as follows:
    a. Motion in limine no. 1 is GRANTED in part, DENIED in part, and DEFERRED in part. The court will exclude Fisher's opinions and

testimony related to the average royalty rate in the automobile industry; DZEM's market share; and references to DZEM's patents. The court will not preclude Fisher from testifying about her analysis of DZEM's cost transparency document. The court will defer ruling on references to the court's now-reversed order.

b. Motion in limine no. 2, regarding testimony and evidence about statements from customers about the performance of SSI's sensors, is GRANTED in part and DEFERRED in part. DZEM may not introduce testimony and evidence about statements from customers about the performance of SSI's sensors. The court will defer ruling on whether this ruling extends to the Navistar development agreement that SSI identified in its motion.

c. Motion in limine no. 3, to exclude evidence and testimony concerning the testing and sale of coverless sensors and sensor quality, is GRANTED in part and DEFERRED in part. DZEM may not introduce the spreadsheets it created for litigation showing sales of its sensors; Kirby may not offer testimony on the defects in SSI sensors. The court will defer ruling on whether the parties' experts may refer to the spreadsheet data, whether DZEM may rely on documents concerning its coverless sensor testing produced after Kirby's Rule 30(b)(6) deposition, and whether Kirby may testify about testing of DZEM's sensors.

d. Motion in limine no. 4, to exclude certain opinions and testimony from Jack Ganssle, is GRANTED.

e. Motion in limine no. 5, concerning documents that SSI contends were untimely produced, is DEFERRED.

f. Motion in limine no. 6, concerning the court's summary judgment opinion, is GRANTED in part and DEFERRED in part. The court will exclude evidence and argument related to the claims that have been dismissed for this case, as well as evidence and argument that challenges the court's 2024 summary judgment ruling. The court will defer ruling on how to address the court's 2021 non-infringement opinion.

2. The court rules on defendant Dongguan Zhengyang Electronic Mechanical LTD's motions in limine as follows:

   a. Motions in limine nos. 1 and 2, concerning references to the nationalities of the parties and DZEM's full name, are GRANTED as unopposed.

   b. Motions in limine no. 3, to exclude opinions and testimony about Bero's lost profits analysis as untimely, is DENIED.

   c. Motions in limine nos. 4, 5, and 6, to exclude opinions and testimony from Bero as based on unreliable methods, are DENIED.

Entered September 16, 2024.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge